UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CHARLES JOHN CASOLARO, individually,
CASOLARO & ACCOCIATES, PC.,
CHARLES JOHN CASOLARO, as the legal
Guardian of Albert Casolaro, GENE
GREGORY VOULO, individually and
SOUTHFORK EQUITY GROUP, LLC,

              Plaintiffs,                      **MEMORANDUM & ORDER**
                                                  10 CV 4276 (DRH)(ETB)

     -against-

SCOTT ARMSTRONG, individually, and
THALIA STREET, LLC,

              Defendants.
-------------------------------------------------------X
**APPEARANCES:**

**Casolaro Sussman LLP**
Attorneys for Plaintiffs
1050 Franklin Ave. Ste. 402
Garden City, NY 44530
Uniondale, New York 11556
By:    Eric J. Sussman, Esq.

**Cornell Group PLLC**
Attorneys for Defendants
350 Fifth Ave. Ste. 1729
Empire State Bldg.
New York, NY 10119
By:    Kenneth F. McCallion, Esq..

**HURLEY, Senior District Judge:**

       Plaintiffs bring this diversity action seeking damages arising from the alleged breach of a

settlement agreement.  Presently before the Court is plaintiffs' motion for summary judgment

pursuant to FED. R. CIV. P. 56.  For the reasons discussed below, plaintiffs' motion is denied

without prejudice.

# BACKGROUND

In March 2009, plaintiffs entered into a business relationship with defendants involving the purchase of Collateralized Mortgage Obligation ("CMO") bonds. (Compl. ¶¶ 10-11.) Consistent with an understanding between the two parties, plaintiffs transferred $400,000 to defendants to fund the purchase of certain CMOs. (Compl. ¶¶ 11.) For reasons that are not entirely clear from the record, nor particularly relevant to this action, the deal between the parties did not work out as anticipated. (Compl. ¶¶ 13-17.) As a result, plaintiffs presented defendants with a "demand letter" dated May 24, 2010 seeking compensation "regarding CMO Bond: JP Morgan Chase Commercial Mortgage CUSIP NUMBER 44628FAK7." (Settlement Agreement and Release, at preamble, attached to the Casolaro Affidavit as Exhibit A; *see* compl. ¶ 18.)

To resolve the matter, the parties entered into a settlement agreement ("Agreement") on June 11, 2010. (Compl. ¶ 19.) That Agreement contemplated a payment to plaintiffs in the amount of $420,000 by June 30, 2010 in exchange for the transfer to defendants of all "right, title, and interest" in the CMO referred to in the demand letter, as well as a release from all liability arising from the original CMO transaction.[1] (Agreement §§ 1.1, 1.3, 1.5, 3.0.) A subsequent amendment to that Agreement extended the due date for defendants' payment to July 5, 2010.[2] (First Amendment to the Settlement Agreement and Release §§ 1-2, attached to the Casolaro Affidavit as Exhibit A.) There is no dispute that defendants have failed to make payment under the Agreement. (Defendants' Statement Pursuant to Local Rule 56.1 ¶ 2.)

---

[1] The details of defendants' purchase of plaintiffs' interest in the CMO are set forth in what is entitled the "Purchase and Sale Agreement." The Purchase and Sale Agreement is explicitly incorporated into the Settlement Agreement (Agreement § 1.1) and attached thereto as Exhibit A.

[2] Although the Complaint identifies this new date as July 6, 2010, the Amended Agreement states that the payment shall be made by July 5, 2010.

Plaintiffs assert five causes of action in their complaint arising from defendants' failure to tender payment: breach of contract, breach of covenant of good faith and fair dealing, unjust enrichment, conversion, and breach of fiduciary duty. (*Id.* ¶¶ 25–48.) The present motion, however, only moves for summary judgment on the breach of contract claim.

Although defendants acknowledge their non-payment, they nonetheless assert that various issues of fact preclude the disposition of the case by summary judgment. (Defs.' Mem. Opp'n. Summ. J. ("Ds' Opp").) First, defendants argue that the "settlement between the parties was contingent on Mr. Armstrong completing 'another transaction with a third party.'" (*Id.* at 1; Affidavit of Scott Armstrong ("Armstrong Aff.") ¶ 13.) Second, they argue that the Agreement was the product of coercion and duress, and therefore unenforceable. (Ds' Opp. at 2; Armstrong Aff. ¶¶ 15–16.) Finally, they argue that "since defendants have not yet paid . . . , title to those financial instruments still rests with plaintiffs," and therefore plaintiffs have not yet been damaged. (Ds'Opp. at 2.)

## DISCUSSION

### I.   Legal Standard

Summary judgment should be granted where the pleadings and admissible evidence offered to the Court demonstrate "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56; *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). An issue of fact is genuine if the "evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). Further, the relevant governing law determines which facts are material;

"only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Accordingly, where the undisputed facts demonstrate the union of all the required elements of a cause of action and no reasonable juror could find otherwise, the plaintiff is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existent of an element essential to that party's case.").

A party may defeat a motion for summary judgment only "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." *Roe*, 542 F.3d at 36 (quoting *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998)). The non-movant must advance "more than a scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (citing FED.R.CIV.P. 56(e)).[3] Conclusory statements in affidavits or allegations in the pleadings are therefore insufficient to defeat a motion for summary judgment. *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

---

[3] The cited portion of FED.R.CIV.P. 56(e) was renumbered as Rule 56(c)(4) as part of the amendments to Rule 56 effective December 1, 2010.

## II.  Personal Jurisdiction

As an initial matter, defendants' answer asserts as an affirmative defense the lack of personal jurisdiction due to insufficient service of process. (Answer, Second Affirmative Defense.)  Defendant Scott Armstrong's ("Armstrong") affidavit in opposition to plaintiffs' motion also states the following:

> I was never personally served with the legal papers in this action, and I was certainly was not served on or before October 4, 2010 as required by the Court's order of September 20, 2010.  Rather, I noticed on October 13, 2010 that the papers had been shoved under my doormat.

(Armstrong Aff. ¶ 3.)[4]

Under FED. R. CIV. P. 4(e)(1), service of process may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."   Plaintiffs' affidavit of service states that Armstrong was served with process at his address in Scottsdale, Arizona by taping a copy of the relevant papers to the door of his premises, and by subsequently mailing a separate copy to Armstrong of the same. (*See* Affirmation of Service, docket no. 8.) This form of service was executed after the process server made six attempts to serve the papers personally on Armstrong on three separate days. (*Id.*)  Defendants have made no argument as to why this method of service is not sufficient under the laws of Arizona pertaining to the service of process. Moreover, defendants have failed to move to dismiss the complaint on such grounds. *See* Fed. R. Civ. P. 12(b)(5).

---

[4] The Court's Order referred to above is likely the Order to Show Cause regarding plaintiffs' application for a preliminary injunction, which directs service of the Order by October 4, 2010. (*See* docket no. 4.) Plaintiffs' application for preliminary injunction was denied for failing to demonstrate irreparable harm. (*See* docket no. 10; Transcript of Proceedings held on October 22, 2010, attached to plaintiffs' motion.)

Although a court may consider affirmative defenses at the summary judgment stage, it may only do so "in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003). A consideration of defendants' affirmative defense here would constitute undue prejudice to plaintiffs. Prescinding from the fact that defendants have not actually moved to dismiss for insufficient process, defendants devote no more than a passing mention of the matter in their papers. No further arguments or citations to law, statutory or otherwise, are offered in support. Plaintiffs cannot be expected to defend an application to dismiss a complaint—assuming Armstrong's affidavit could even be construed as such—of which they have had no notice. The Court will therefore not address the merits of defendants' affirmative defense for insufficient service of process.

III.     **Breach of Contract**

To prevail under a breach of contract claim in New York, a plaintiff must show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). As will be discussed below, defendants' argument concerning damages dovetails with the question of plaintiffs' performance under the contract. The Court will therefore begin by addressing the first and third elements of the breach of contract claim, then proceed to a concurrent analysis of the second and fourth elements.

*A. The Existence of an Agreement*

Defendants do not dispute that they entered into the subject contract. Rather, they argue that a material issue of fact exists as to whether the contract is voidable as a product of duress

and coercion.  The only evidence advanced to support this assertion, however, is Armstrong's conclusory statement in his affidavit that he "strongly feel[s] that the June 11, 2010 agreement that [he] signed is not enforceable since it is the product of coercion and duress."  (Affidavit of Scott Armstrong ("Armstrong Aff.") ¶ 15.)  No explanation is offered as to how the plaintiffs allegedly "threat[ened]" and coerced him into signing the agreement. (*See id.*); *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993)(To defeat a motion for summary judgment, the non-movant must set forth "specific facts showing that there is a genuine issue of material fact to be tried.").  Furthermore, "self-serving affidavits, sitting alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment." *Gma Accessories v. Dorfman-Pacific Co.*, No. 11 Civ. 3731 (KBF), 2012 U.S. Dist. LEXIS 35248 (S.D.N.Y. Mar. 15, 2012)(citing *BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996)).  Defendants' allegations of coercion and duress therefore fail to demonstrate a material issue of fact as to whether the settlement agreement constituted a valid and enforceable contract.

*B. Defendants' Breach*

Although defendants acknowledge that they have not tendered payment, they nevertheless contend that their failure to pay cannot amount to non-performance because a necessary condition precedent to payment never materialized.  (Ds' Mot. at 1; Armstrong Aff. ¶ 13.) Specifically, defendants contend that it was understood by all parties that their payment was contingent upon securing financing from a third party. (Armstrong Aff. ¶ 13.)  However, this alleged contingency does not appear anywhere in either the Settlement Agreement or the Purchase and Sale Agreement (the "PSA") incorporated therein.

"It is well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 163, 566 N.E.2d 639, (1990). "If a contract is unambiguous on its face, the parties' rights under such a contract should be determined solely by the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable." *Waldman v. Riedinger*, 423 F.3d 145, 149 (2d Cir. 2005)(citing *County of Suffolk v. Alcorn*, 266 F.3d 131, 138 (2d Cir. 2001))(applying New York law). Contract language is unambiguous where "it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* (citation omitted).

Defendants fail to identify any ambiguous language in the Agreement on this point, and none is apparent from a perusal of the relevant portions of the instrument. The Court, therefore, may not look beyond the four corners of the contract to the purported condition precedent that defendants urge the Court to consider. Furthermore, the Agreement contains a merger clause stating that "[t]his document contains the complete Agreement between the parties and supersedes all other agreements." (Agreement 7.1.) Therefore, the plain language of the Agreement, coupled with the defendants' admission that they have not tendered payment, demonstrates that defendants have failed to meet their obligations under the contract.

*C. & D. Plaintiffs' Performance and their Damages*

Although defendants do not directly address the question of whether plaintiffs have performed under the contract, the issue is nevertheless intertwined with defendants' argument that plaintiffs have not suffered damages as a result of the breach. This argument urges a

reading of the Agreement wherein plaintiffs' release of all title to, and interest in, the subject

CMO is contingent on defendants first tendering payment. Until payment is made, defendants

argue, plaintiffs retain title in the CMOs and therefore have neither performed under the contract

(*i.e.*, conveyed title), nor can they claim damages. Defendants' theory is based on their likening

the Agreement to a sales contracts, which, they insist—without citation to any authority—cannot

be completed "unless and until consideration is received for the goods being sold." (Ds' Opp. at

2.)

Plaintiffs respond that this theory is inconsistent with the PSA, which provides that "[a]s

of the Effective Date, Sellers will cease to have any right title or interest whatsoever in the CMO

and all right, title and interest as an owner shall be terminated and without any further force and

effect." (Ps' Reply Memo at 6 (citing PSA § 2.3).) What plaintiffs fail to note, however, is that

the "Effective Date," does not occur under the PSA until the date of "receipt by Sellers of the

Purchase Price," which, of course, has not occurred. (PSA § 1.1.) Similarly, section 3.4, which

was not cited by either party, provides:

> [T]he sale of the CMO shall be effective as of the Effective Date,
> from and after which date Purchaser shall be the legal and
> beneficial owner of the CMO for all purposes and registered
> ownership of the CMO will be transferred to Purchaser as of the
> Effective Date. It is the intention of the Parties that all the benefits
> and burdens of ownership of the CMO shall transfer to Purchaser
> on the Effective Date.")

(PSA § 3.4.)

Together, these passages would support defendants' contention that because they have

not yet made payment, plaintiffs retain their right to the CMOs. However, a separate provision

of the PSA, also not cited by the parties, militates in favor of different conclusion. Section 2.1

states the following:

> In exchange for Purchaser's payment to Sellers of the Purchase Price, Sellers hereby sell, convey and deliver to purchaser . . . and Purchaser hereby accepts from Sellers . . . the CMO. Upon execution of this Agreement, Sellers relinquish and will convey any and all right, title and interest in and to the CMO Purchaser.

(PSA § 2.1.)

This passage suggests that plaintiffs actually relinquish title and interest in the CMO as of the "execution" of the PSA, or at the point in which all parties sign the document. *See* Black's Law Dictionary (6th ed. 1990)(Execution: "Execution of contract includes performance of all acts necessary to render it complete as an instrument and imports [the] idea that nothing remains to be done to make [a] complete and effective contract."); *see also Garrett v. Music Publ'g Co. of Am., LLC*, 740 F. Supp. 2d 457, 462 (S.D.N.Y. 2010)(interpreting the word "execution" to mean the date the parties sign the agreement "formalizing their acceptance of the contract, [and] marking the commencement of the parties' legal relationship," not the date of the payment of the Purchase Price).

This apparent ambiguity in the Agreement is material to the issue of damages in this case.[5] "It is well settled that in breach of contract actions 'the nonbreaching party may recover general damages which are the natural and probable consequence of the breach.'" *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 192, 886 N.E.2d 127 (2008)(citing *Kenford Co. v County of Erie*, 73 N.Y.2d 312, 319, 537 N.E.2d 176 (1989)); *see also Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007)("A party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms.")(applying New York law). "[U]nder New York law, the normal measure of damages for breach of contract is expectation damages," *McKinley Allsopp,*

---

[5] The Agreement does not provide for liquidated damages.

*Inc. v. Jetborne Int'l, Inc.*, No. 89 Civ. 1489, 1990 U.S. Dist. LEXIS 12405 (S.D.N.Y. Sept. 18, 1990), which allow for the loss in value to plaintiff as a result of the defendant's failure to perform, plus any other incidental or consequential loss from the breach, minus any loss avoided by the plaintiff from not having to perform under the agreement. *See* Restatment 2d of Contracts, § 347.

Therefore, if plaintiffs no longer hold title to the CMO, they would be entitled to the full purchase price under the Agreement, or $420,000. If, on the other hand, plaintiffs retained their interest in the CMO, they would be entitled to the purchase price, plus any incidental loss, minus the current value of the CMO. If plaintiffs indeed retained their interest in the CMO, and its current value is greater than or equal to the purchase price, then plaintiffs could conceivably not have incurred any damages at all. While the Court has little doubt that plaintiffs have suffered damages as a result of defendants' breach, the record is nonetheless insufficient to determine the existence or amount of any damages. Moreover, as the existence of damages is an element of a claim for breach of contract, the Court is unable to resolve either liability or damages on the breach of contract claim. At this stage, the Court has not had the benefit of briefing from the parties on whether the plaintiffs have retained their interest in the CMO.

The Court therefore denies plaintiffs' motion for summary judgment on its claim for breach of contract *without prejudice* to refile upon a further showing regarding the plaintiffs' ownership interest in the CMO and/or a showing of actual damages flowing from defendants' breach of the Agreement. The Courts' conclusions regarding the first and third elements of the claim for breach, however, shall hereinafter be considered the law of the case and may not be relitigated by the parties in any subsequent motion.

## IV. The Remaining Causes of Action

Plaintiffs assert four other causes of action in the complaint: breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, and breach of fiduciary duty. However, plaintiffs did not move for summary judgment on these claims, nor do they even mention them in the present motion. The Court will therefore not address these claims here.

## V. Attorney's Fees

As the Court has denied plaintiffs' motion for summary judgment without prejudice, it defers ruling on plaintiffs' concomitant request for attorney's fees. Nevertheless, the Court notes that New York follows the "American Rule," whereby "attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule." *A.G. Ship Maintenance Corp. v. Lezak*, 69 N.Y.2d 1, 5, 503 N.E.2d 681 (1986); *see Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003)(applying the rule from *A.G. Ship Maintenance* to a breach of contract claim under New York law in federal court). The only basis offered by plaintiffs for such an award is a vague reference in their Rule 56.1 statement to the "Settlement Agreements." (Rule 56.1 Statement ¶ 3). Any subsequent application for attorney's fees must set forth sufficient grounds for such an award.

**CONCLUSION**

For the foregoing reasons, the Court denies plaintiffs' motion for summary judgment without prejudice to refile in the manner set forth above within 45 days of the entry of this Order, the Court dispensing with its usual bundle rule. *See* Individual Rule 3F.


SO ORDERED.

Dated: Central Islip, New York
    March 22, 2012

_____/s_____
Denis R. Hurley
United States District Judge