UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CHARLES JOHN CASOLARO, individually,
CASOLARO & ASSOCIATES, PC.,
CHARLES JOHN CASOLARO, as the legal
Guardian of Albert Casolaro, GENE
GREGORY VOULO, individually and
SOUTHFORK EQUITY GROUP, LLC,

                Plaintiffs,                      **MEMORANDUM & ORDER**
                                                                 10 CV 4276 (DRH) (ETB)

    -against-

SCOTT ARMSTRONG, individually, and
THALIA STREET, LLC,

                Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Casolaro Sussman LLP**
Attorneys for Plaintiffs 1050
Franklin Ave. Ste. 402
Garden City, NY 11530
 By:   Eric J. Sussman, Esq.

**The Cornell Group PLLC**
Attorneys for Defendants
60 East 42 Street, Suite 2515
New York, NY 10165
By:   Kenneth F. McCallion, Esq.

**HURLEY, Senior District Judge:**

        Plaintiffs bring this multi-count diversity action seeking damages based on an alleged breach of a settlement agreement. By Memorandum & Order dated March 22, 2012 ("March 2012 Order"), the Court denied, without prejudice to refile, plaintiffs' motion for summary judgment. Presently before the Court is plaintiffs' renewed motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. While five causes of action are

asserted in the Complaint, plaintiffs moved initially, as they do now, for summary judgment on only their breach of contract claim. For the reasons set forth below, plaintiffs' motion is DENIED.

### BACKGROUND

In March 2009, plaintiffs entered into a business relationship whereby they "agreed to fund some trading in Collateralized Mortgage Obligation ("CMO") bonds being offered by and through defendants." (Compl. ¶ 10.) Plaintiffs funded the purchase of its portion of the CMO in the amount of $400,000. (*Id.* ¶ 11.) After not receiving any funds from the purported sale of the CMO by defendants, plaintiffs presented defendants with a "demand letter" dated May 24, 2010 seeking compensation regarding the CMO. (*Id.* ¶¶ 13-18; Casolaro Aff., Ex. G ("Settlement Agreement") at 1). To resolve the ensuing dispute, the parties entered into a Settlement Agreement on June 11, 2010. (Compl. ¶ 19; Settlement Agreement). Pursuant to the Settlement Agreement, defendants agreed to pay plaintiffs $420,000 by June 30, 2010 in exchange for plaintiffs (1) agreeing to "transfer all right, title and interest in the CMO" pursuant to a Purchase and Sale Agreement, which is explicitly incorporated into the Settlement Agreement and attached thereto as an exhibit; and (2) releasing defendants from all liability. (Settlement Agreement ¶¶ 1.1, 1.3, 1.5, 3.1-3.5.). A subsequent amendment to the Settlement Agreement extended the due date for defendants' payment to July 5, 2010. (Casolaro Aff., Ex. G ("First Amendment to Settlement Agreement.")) There is no dispute that defendants have failed to make payment under the Settlement Agreement. In a nutshell, that is the genesis of the present suit.

## DISCUSSION

I.  **Legal Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, on conclusory statements, or on "mere assertions that

3

affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

II. **Plaintiffs' First Motion for Summary Judgment**

On March 11, 2011, plaintiffs moved for summary judgment on their breach of contract claim. Defendants, while acknowledging their non-payment, countered that issues of fact precluded a finding for plaintiffs. First, defendants argued that the Settlement Agreement was contingent on defendant Armstrong completing another transaction with a third party. Second, defendants claimed that the Settlement Agreement was the product of coercion and duress, and therefore unenforceable. Finally, defendants maintained that plaintiffs have not been damaged since title to the financial instruments still rests with them.

Applying the four elements a plaintiff must satisfy to prevail on a breach of contract claim,[1] it was determined that plaintiff established the first and third elements, namely the existence of an agreement and that defendants failed to meet their obligations under the agreement. With regard to the existence of an agreement, the Court concluded that "[d]efendants' allegations of coercion and duress [] fail to demonstrate a material issue of fact as to whether the settlement agreement constituted a valid and enforceable contract." *Casolaro v. Armstrong*, 2012 WL 976063, at *3 (E.D.N.Y. Mar. 22, 2012). As to the existence of a breach, the Court rejected defendants' contention that the Settlement Agreement was contingent on securing financing from a third party and held that "the plain language of the Agreement, coupled with the defendants' admission that they have not tendered payment, demonstrates that defendants have failed to meet their obligations under the contract."[2] *Id.* at *4.

Nevertheless, the Court was unable to conclude that plaintiffs established the second and fourth elements of a breach of contract claim, namely plaintiff's performance under the contract and damages. In opposing summary judgment, defendants argued that plaintiffs could not establish that it suffered a loss as a result of defendants' non-payment since plaintiffs' release of all title to, and interest in, the CMO was contingent on defendants first tendering payment.[3]

---

[1] The elements of a breach of contract claim in New York are as follows: "(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

[2] Plaintiffs claim that the statement made by defendants' counsel during the October 22, 2010 hearing "essentially decided the case on its merits." At this hearing, defendants' counsel indicated on the record that "[t]he money is due." (Casolaro Aff., Ex. I.) However, as the March 2012 Order found, this statement only goes to the second element, the defendants' breach.

[3] Although the argument that plaintiffs retained their interest in the CMO was proffered only in response to the element of damages, it was determined by the Court that such an argument implicated both the element of damages as well as the element of plaintiffs' performance under the contract.

5

Plaintiffs countered that defendants' contention was inconsistent with Section 2.3 of the Purchase and Sale Agreement ("PSA"), which as noted earlier, is part of, and attached to the Settlement Agreement. (Settlement Agreement ¶ 1.1.) Section 2.3 of the PSA provides that "[a]s of the Effective Date, Sellers will cease to have any right, title or interest whatsoever in the CMO and all right, title and interest as owner shall be terminated and without any further force and effect." However, the March 2012 Order identified the flaw in plaintiffs' argument in that the term "Effective Date" was defined in Section 1.1 of the PSA as the date upon which plaintiffs received the $420,000 from defendants.

Moreover, the March 2012 Order drew attention to two further sections of the PSA, neither of which were cited by the parties. First, Section 3.4 stated the following:

> It is the intention of the Parties that the sale of the CMO shall be effective as of the Effective Date, from and after which date Purchaser shall be the legal and beneficial owner of the CMO for all purposes and registered ownership of the CMO will be transferred to Purchaser as of the Effective Date. It is the intention of the Parties that all the benefits and burdens of ownership of the CMO shall transfer to Purchaser on the Effective Date.

(*See* Casolaro Aff., Ex. G ("Purchase and Sale Agreement") § 3.4.) However, Section 2.1 of the PSA provided:

> In exchange for Purchaser's payment to Sellers of the Purchase Price, Sellers hereby sell, transfer, convey and deliver to Purchaser . . . and Purchaser hereby accepts from Sellers . . . the CMO. Upon execution of this Agreement, Sellers relinquish and will convey any and all right, title and interest in and to the CMO to Purchaser.

(*Id.* § 2.1.) While the Court noted that Section 2.3 and 3.4 "would support defendants' contention that because they have not yet made payment, plaintiffs retained their right to the CMOs," it was also noted that Section 2.1 "militates in favor of a different conclusion" in that

6

"[t]his passage suggests that plaintiff actually relinquish title and interest in the CMO . . . at the point in which all parties sign the document." *Casolaro*, 2012 WL 976063, at *5.

Due to the ambiguous language in the PSA, coupled with the lack of record evidence establishing the existence or amount of damages, plaintiffs' motion was denied "*without prejudice* to refile upon a further showing regarding the plaintiffs' ownership interest in the CMO and/or a showing of actual damages flowing from defendants' breach of the Agreement."[4] *Id.* at *6. The parties were instructed that "[t]he Courts' conclusions regarding the first and third elements of the claim for breach, however, shall hereinafter be considered the law of the case and may not be rellitigated by the parties in any subsequent motion." *Id.*

### III. Plaintiffs' Renewed Motion for Summary Judgment

In addition to the arguments contained in plaintiffs' memorandum which were taken verbatim from their first motion for summary judgment and were resolved in the March 2012 Order, plaintiffs argue that (1) Section 2.3 of the PSA terminated all rights of the plaintiffs to the CMO as of the July 5, 2010 effective date of the PSA; (2) Section 2.1 of the PSA indicates that plaintiffs relinquished all right, title and interest in the CMO to defendants upon execution; and

---

[4] Exemplifying how the ambiguity in the PSA impacted the element of damages, the Court hypothesized:

> [I]f plaintiffs no longer hold title to the CMO, they would be entitled to the full purchase price under the Agreement, or $420,000. If, on the other hand, plaintiffs retained their interest in the CMO, they would be entitled to the purchase price, plus any incidental loss, minus the current value of the CMO. If plaintiffs indeed retained their interest in the CMO, and its current value is greater than or equal to the purchase price, then plaintiffs could conceivably not have incurred any damages at all.

*Casolaro*, 2012 WL 976063, at *6.

(3) damages equate to $420,000 since plaintiffs no longer hold title, dominion or control over the CMO. In response, defendants reargue issues which were previously decided in the March 2012 Order and allege facts that have no relevance to the remaining elements of plaintiffs' breach of contract claim.

Essentially, plaintiffs' arguments attempt to show that their ownership interest in the CMO terminated by operation of the PSA, and therefore they suffered damages totaling $420,000. However, and as discussed in the March 2012 Order, it is unclear based on the various sections of the PSA when plaintiffs' interest in the CMO terminates. While plaintiffs claim that the use of the term "effective date" in Section 2.3 is synonymous with the date the PSA was executed, this contention is out-of-sync with the PSA's own definition of "effective date," which is the date plaintiffs receive $420,000 from the defendants. Furthermore, while Section 2.1 does lend support to the position that plaintiffs relinquished all rights in the CMO upon execution, two other section in the CMO, namely Sections 2.3 and 3.4, state otherwise. Since the PSA fails to convey a definite meaning as to when plaintiffs' interest in the CMO terminates, plaintiffs' motion hinges on ambiguous contract language. *See Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) ("Ambiguity here is defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." ); *see also Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) ("Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 2000)).

8

"Although generally interpretation of ambiguous contract language is a question of fact to be resolved by the factfinder, the court may resolve ambiguity in contractual language as a matter of law if the evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide the contrary." *Compagnie*, 232 F.3d at 158 (internal quotation marks and citations omitted). The extrinsic evidence submitted by plaintiffs indicate, at most, that plaintiffs never retained physical control over the CMO. (*See* Casolaro Aff., Exs. B-F; Voulo Aff., Exs. B-F.) However, the fact that plaintiffs never had physical control over the CMO has no bearing on whether plaintiffs still have an interest in the CMO. Therefore, the extrinsic evidence does not unambiguously support plaintiffs' interpretation that their interest in the CMO terminated on the date the parties signed the CMO. And since this ambiguity over plaintiffs' interest in the CMO directly impacts the determination of whether plaintiffs suffered damages as a result of defendants' breach, the record is insufficient to grant summary judgment on plaintiffs' breach of contract claim.

## *CONCLUSION*

For the foregoing reasons, plaintiffs' renewed motion for summary judgment is denied. This action is respectfully referred to Magistrate Judge Boyle for all remaining pretrial supervision.

**SO ORDERED.**

Dated: Central Islip, New York
December 7, 2012

/s/
Denis R. Hurley
United States District Judge

9